IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 14-cv-00240-REB-BNB

ZACH GEIGER,
ROBERT ABELARDO,
ADAM GOLDSTEIN, and
RYAN KING,

      Plaintiffs,

v.

Z-ULTIMATE SELF DEFENSE STUDIOS, LLC, a California limited liability company,
PAUL TAYLOR, individually, and in his capacity as owner, partner, and corporate officer,
WILLIAM CLARK, individually and in his capacity as owner, partner, and corporate officer,
KRIS ESZLINGER, individually, and in his capacity as owner, partner, and corporate officer,
FRANK LEY, individually and in his capacity as owner, partner, and corporate officer,
HANS PROSCH, individually, and in his capacity as owner, partner, and corporate officer,
MASTERS UNITED III LLC, dba Z-Ultimate Self Defense Studios, an Arizona limited liability company,
MASTERS UNITED 11, LLC, an Arizona limited liability company d/b/a Z-Ultimate Self Defense Studios,
KATA 7, LLC, an Arizona limited liability company b/a/a Z-Ultimate Self Defense Studios,
Z-ULTIMATE MARTIAL ARTS SUPPLIES LLC, a California limited liability company,
Z-ULTIMATE SPECIALIZED ACCOUNTING LLC, a California limited liability company,
Z-ULTIMATE UNIVERSITY OF MARTIAL ARTS PROFESSIONALS LLC, a California limited liability company,
MASTERS UNITED I, LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
MASTERS UNITED 12 LLC,
MASTERS UNITED 111 LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company
MASTERS UNITED V LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company
Z-ULTIMATE EVENTS LLC, a Colorado limited liability company,
A L MARTIAL ARTS, INC.,  d/b/a Z-Ultimate Self Defense Studios,a Colorado corporation
WLC MANAGEMENT, INC.,  d/b/a Z-Ultimate Self Defense Studios, a Colorado corporation
MASTERS UNITED VI LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company
MASTERS UNITED 8 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company
MASTERS UNITED 15 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company

UNITED PARTNERS - BROOMFIELD LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company

UNITED PARTNERS - CASTLE ROCK LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company

UNITED PARTNERS - CENTENNIAL LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company

UNITED PARTNERS - CHICAGO #2 d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - CHICAGO #4 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - COLORADO SPRINGS 1 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - COLORADO #1 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - COLORADO #2 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - COLORADO #3 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - COLORADO #4, LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - DENVER LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - DENVER SOUTH LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - FORT COLLINS LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - GLENVIEW LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - HIGHLANDS RANCH LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - HIGHLANDS RANCH 2 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - KANSAS CITY #3 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - KANSAS CITY 1 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - KANSAS CITY #4 LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - KEN CARYLE LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - LAFAYETTE LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

UNITED PARTNERS - LAKEWOOD LLC, d/b/a Z-Ultimate Self Defense Studios, a Colorado limited liability company,

2

UNITED PARTNERS - LEAWOOD LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - LITTLETON LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - LONGMONT LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - OLATHE LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - OVERLAND PARK NORTH LLC, d/b/a Z-Ultimate Self Defense
Studios, a Colorado limited liability company,
UNITED PARTNERS - OVERLAND PARK SOUTH LLC, d/b/a Z-Ultimate Self Defense
Studios, a Colorado limited liability company,
UNITED PARTNERS - PARKER LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - SKOKIE LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - SMOKEY HILL LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - THORNTON LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - WEST ARVADA LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - WESTMINSTER LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
UNITED PARTNERS - WHEAT RIDGE LLC, d/b/a Z-Ultimate Self Defense Studios,
a Colorado limited liability company,
Z-ULTIMATE COLORADO SPRINGS, a Colorado business,
Z-ULTIMATE DENVER, a Colorado business,
Z-ULTIMATE HIGHLANDS RANCH EAST, a Colorado business,
Z-ULTIMATE PARKER, a Colorado business,
Z-ULTIMATE SMOKEY HILLS, a Colorado business,
UNITED PARTNERS - LAYTON LLC, d/b/a Z-Ultimate Self Defense Studios, a Utah limited
liability company,
UNITED PARTNERS - SANDY LLC, d/b/a Z-Ultimate Self Defense Studios, a Utah limited
liability company,
UNITED PARTNERS - SOUTH JORDAN LLC, d/b/a Z-Ultimate Self Defense Studios,
a Utah limited liability company,
UNITED PARTNERS - SOUTH OGDEN, LLC, d/b/a Z-Ultimate Self Defense Studios,
a Utah limited liability company,
UNITED PARTNERS - UTAH LLC, d/b/a Z-Ultimate Self Defense Studios, a Utah limited
liability company,
UNITED PARTNERS - WEST JORDAN LLC, d/b/a Z-Ultimate Self Defense Studios,
a Utah limited liability company,
UNITED PARTNERS - CHANDLER LLC, d/b/a Z-Ultimate Self Defense Studios, an Arizona

limited liability company,

UNITED PARTNERS - SCOTTSDALE LLC, d/b/a Z-Ultimate Self Defense Studios, an Arizona limited liability company,

UNITED PARTNERS - GRAYHAWK LLC, d/b/a Z-Ultimate Self Defense Studios,       an Arizona limited liability company,

UNITED PARTNERS - SCOTTSDALE 2 LLC, d/b/a Z-Ultimate Self Defense Studios, an Arizona limited liability company,

UNITED PARTNERS - TEMPE LLC, d/b/a Z-Ultimate Self Defense Studios, an Arizona limited liability company,

UNITED PARTNERS - BALLARD LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - BELLEVUE LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - KENT LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - KIRKLAND LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - MERCER LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - MILL CREEK LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - REDMOND LLC, d/b/a Z-Ultimate Self Defense Studios, a Washington limited liability company,

UNITED PARTNERS - AGOURA HILLS LLC d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - ANAHEIM HILLS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - BRANFORD LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CAMPUS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CARLSBAD LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CARMEL MOUNTAIN LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CHINO HILLS, LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CLAIREMONT, LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CORONA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - CYPRESS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - DANVILLE LLC, d/b/a Z-Ultimate Self Defense Studios, a California

limited liability company,

UNITED PARTNERS - DUBLIN LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - ENCINO LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - ESCONDIDO LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - FALLBROOK LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - HACIENDA HEIGHTS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LA CANADA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LA JOLLA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LA MIRADA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LAGUNA NIGUEL LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LAKEWOOD LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LAYTON LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - LONG BEACH LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - MARINA DEL REY LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - MIRA MESA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - MURRIETA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - NORWALK LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - ORANGE HILLS, LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - POINT LOMA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - PORTOLA HILLS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - POWAY LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - RANCHO CUCAMONGA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

UNITED PARTNERS - REDONDO BEACH LLC, d/b/a Z-Ultimate Self Defense Studios, a

California limited liability company,
UNITED PARTNERS - SAN MATEO LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - SOUTH OGDEN LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - STUDIO CITY LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - THOUSAND OAKS LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - TIERRASANTA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - VALENCIA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - VILLA PARK LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,
UNITED PARTNERS - VISTA LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company, and
UNITED PARTNERS - WESTWOOD LLC, d/b/a Z-Ultimate Self Defense Studios, a California limited liability company,

Defendants.

---

## ORDER

---

This matter arises on **Plaintiffs' Motion for Order for Spoliation Sanctions** [Doc. # 52, filed 8/20/2014] (the "Motion for Sanctions").[1]  The relevant facts are disputed but straightforward.  The applicable law requires "a fact specific inquiry" and affords the court "broad discretion."  Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90, 102 (D. Colo. 1996).  The difficulty here arises in applying the law to the facts and determining an appropriate result.

---

[1]The motion initially also sought the entry of a temporary restraining order.  The district judge denied the TRO and referred the spoliation issue to me.  Order [Doc. # 57] at p.1.

The Motion for Sanctions is GRANTED as specified.  The sanction awarded, however, is limited to the plaintiffs' reasonable expenses, including attorneys' fees, incurred in connection with the despoiled discovery.

I.

The plaintiffs assert a collective and class action, principally alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  The plaintiffs raise six claims for relief including:  (1) for a declaration that the plaintiffs are "classified employees under state and federal law"; (2) violation for the FLSA by failing to pay wages at least equal to the minimum wage plus overtime compensation; (3) fraud in classifying the plaintiffs as independent contractors rather than employees; (4) negligent misrepresentation based on the independent contractor classification; (5) civil conspiracy to improperly classify the plaintiffs as independent contractors; and (6) to pierce the corporate veil based on alter ego and undercapitalization.  First Amended Complaint [Doc. # 22].

Through written discovery, the plaintiffs requested "[m]onthly Profit and Loss statements from all Z-Ultimate entities from 2010 to the present."  Document Request # 2 [Doc. # 52-1].  Z-Ultimate is described as "a complex matrix of corporate entities . . . where each martial arts studio ('Dojo') is its own corporate entity, often owned by a separate corporation."  Id. at ¶4.  William Clark is an individual defendant and "a founder and principal of Z-Ultimate."  Id. at ¶19.

Document Request # 2 eventually was provided to the accountant for the Z-Ultimate entities, Heidi Applehans.  In connection with collecting the documents to be produced, Ms. Applehans was contacted by Mr. Clark, who left a voice message instructing her as follows:

7

Heidi, its Master C [Mr. Clark].  It's one--12:15 your time, and I was hoping I would connect with you on this.  I saw your e-mail.  There's a couple things that we have to go over before we send P&Ls.  So I'll give you the best example of what we need to do or--on a message, but you won't be able to reach me the rest of the day.

So here's the thing: Yes we need to give Tom [Francis (defense counsel)] the P&Ls he's looking for.  However, I don't want to give them all the nitty-gritty details of how we're operating stuff, especially when it comes to the profit distribution, because that will give them names of investors.

I know--I know for a fact that there's--the ability for these guys to work with Mattera, the dark side, and feed information back and forth.  We've already proven that they're doing it.

So what I need us to do--what I need you to do is on the Z [draw], the profit distribution, that needs to be moved up temporarily into the equity account.

Equity accounts do not show up on the Profit and Loss Statement.  They only show up on the balance sheet, which they don't need the balance sheet.  So we need to get anything--anything that gives more information and move it to an area that somebody doesn't need to see that in.

And, again, all that matters is the--who the profit is going to is not relevant to the P&L for the people looking at it.  So we just need to move any of the profit distributions temporarily up to an equity account so it doesn't show up on the P&L.

And then, of course, we need to collapse any of the account info so it's just basic.  I would say let me see an example before we send stuff over to Tom, and let's go from there.

I'll talk to you soon.  Definitely text or call.  Leave me information so we can [hammer] some of this stuff out.

All right.  Have a good one.  Talk to you later.

Transcript of Audio Recording, Ex. 12.[2]

Ms. Applehans testified about the Audio Recording during the hearing on October 3, 2014:

> Q      (By Mr. Davlin [plaintiffs' counsel]) Did you receive any orders from Defendant Clark regarding the P&Ls?
>
> A      I did.
>
> Q      And what were those orders generally?
>
> A      It was the voicemail that he left that he wanted me to move anything that had to do with profit out of the expense account and moved into the equity account so that it wouldn't show.  It would be on a balance sheet, and that you guys have not asked for a balance sheet.  So you wouldn't get that.
>
> Q      If he wanted to hide investor information, did you offer him any other options for doing that?
>
> A      I did.  I sent him a P&L that still had the money amounts with the investors' names were not on it, and he sent me an e-mail back telling me to do it the way he said.

Trans. [Doc. # 82] at pp. 71:14 through 72:4.

Ms. Applehans was shown two exhibits (Exs. 14 and 15), which were profit and loss statements for a Dojo in Highlands Ranch, Colorado, and she testified:

> Q      So they're both for the same entity for the same month, but they were produced at different times.  This one [Ex. 14] was produced in--contemporaneously in 2012, and this one [Ex. 15] was produced in 2014 just for us in this case.
>
> A      Correct.

---

[2]I conducted an evidentiary hearing on the Motion for Sanctions on October 3, 2014.  The Audio Recording was played and the transcript was introduced into evidence as Exhibit 12 at that hearing.  Transcript of Proceedings [Doc. # 82] ("Trans.") at pp. 73: 14 through 74:1.

> Q       Generally, what is the difference between these two exhibits?
>
> A       One is collapsed.  One is not.  One shows more information than the other.  None of the subcategories show on the new [Ex. 15].  It only shows--under subcontractors it doesn't show you on [Ex. 15] anybody's name or how much each individual was paid.
>
> Q       Okay.  So let me clarify here.  We've got the same amounts.  Total income listed is 32,760--720.60.  But the larger one that was prepared for an investor or instructor [Ex. 14] breaks out where the money came from, whether that was through credit card through--across state lines.  And it breaks out all of the expenses much more clearly than these do.  They seem to match up for the most part, but the redacted information from the first one [Ex. 14] lists instructor name, doesn't it?
>
> A       It does.
>
> Q       And there's no instructor name on the second [Ex. 15].  This one [Ex. 14] has amounts paid to individual instructors.  Can you discern from the second one how much was paid to individual instructors?
>
> A       No.

Id. at pp.79:13 through 80:14.

On cross examination, Ms. Applehans summarized:

> Q       [By Mr. Francis] And again, none of these financial statements were actually altered at any time between the time you have the e-mail or telephone message from Mr. Clark and actually being generated other than to condense the information and to move profit distributions off of the profit and loss statement?
>
> A       Correct.

Id. at p. 115:1-7.

Ms. Applehans testified that she altered approximately 500 profit and loss statements at

Mr. Clark's direction.  Id. at p.116:13-15.  The plaintiffs now represent that the number is 1,650.

10

Spoliation Summation Brief [Doc. # 79] at p. 1 n.1.

The evidence clearly establishes, and I find, that the profit and loss statements were altered at the direction of Mr. Clark prior to being produced to the plaintiffs. The alterations took two forms: (1) consolidating or collapsing accounts to provide less detail; and (2) removing the entry for "Investor Realized Profit." So, for example, the Highlands Ranch profit and loss statement prepared in January 2012 for investors and chief instructors, Ex. 14, contains the following detail under the expense entry for subcontractors:

| | | | |
|---|---|---:|---:|
| Subcontractor | | | |
| Ashley Dorow | | | 234.00 |
| Jon Dunlap | | | 200.00 |
| Kelly Watts | | | 108.00 |
| Kristen Becker | | | |
| Teaching | | 280.00 | |
| Total Kristen Becker | | | 280.00 |
| Lisa Fugit | | | 145.00 |
| Nico van Poollen | | | |
| Sign Up Commission | 100.00 | | |
| Teaching | 780.00 | | |
| Total Nico van Poollen | | | 880.00 |
| Seth Booze | | | |
| Sign Up Commission | 100.00 | | |
| Teaching | 1,365.00 | | |
| Total Seth Booze | | | 1,465.00 |
| Zach Geigel | | | 765.00 |
| Total Subcontractor | | | 4,077.00 |

The altered profit and loss statement for the same Dojo and the same time period, Ex. 15, has a single line entry--"Subcontracter [sic]   4,077.00"--with none of the detail concerning the identities of the subcontractors or the breakdown of the amount owed to each and for what services.

In addition, the original profit and loss for the Highlands Ranch Dojo, Ex. 14, includes the following entry:

| (z) Investor Realized Profit | |
|---|---|
| Danny & Sherri Claycomb (5%) | 300.00 |
| Masters United VI ([95]%) | 5,700.00 |
| Total (z) Investor Realized Profit | 6,000.00 |

The original profit and loss, Ex. 14, reports total income of $32,720.60; total investor realized profit of $6,000.00; total other expenses of $11,186.55; and a net income of $5,576.63. The altered profit and loss statement, Ex. 15, by contrast, contains no line item for investor realized profit. As a result, the altered profit and loss shows a total net income of $11,876.63. The difference between the two is simply that the original statement, Ex. 14, reports distribution of profits to investors while the altered statement, Ex. 15, does not.

The plaintiffs' accounting expert testified about the deletion of the investor realized profit line as follows:

> THE COURT:   Before you move on, the . . . investor-realized profits ordinarily would be considered dividends, right, paid to investors?

> THE WITNESS:  If I may elaborate on that, Your Honor. Depending on what agreements there are, there are Internal Revenue regulations that say a guaranteed payment to a partner should be an expense of the partnership and is actually listed on the partnership expenses. It may not necessarily be a split of the profits.

> Depending on the agreements of the parties, many partnerships pay this guaranteed payment. This is your--and it's considered almost like a salary expense on the front of the tax return, and then the partner picks that up as income--separate income from the partnership on his tax return.

> So both can be correct depending on the agreement of both parties, but the difference is not correct. They should be handled the same. It's either a guaranteed payment, or its not a guaranteed payment.
>                         *    *    *
> If it is not a guaranteed payment, then it goes into profit. As an old accounting professor once said, "It all comes out in the wash." But these are two different--they're showing it two different ways.

12

Only one of these can be considered correct.

Trans. [Doc. # 82] at pp. 136:20 through 138:7.  The undisputed evidence is that the payments to

investors in this case are not guaranteed; are not expenses; and, instead, go into profit.  Id. at p.

156:5-9.

Based on these facts, the plaintiffs seek sanctions for spoliation of evidence, including

the entry of a default judgment or, alternatively, an adverse inference jury instruction, that the

defendants failed to pay chief instructors at least minimum wage plus overtime, piercing the

corporate veil and imposing personal liability on the individual defendants; an award of their

costs and attorneys' fees in bringing the Motion for Sanctions; and "substantial monetary

penalties sufficient to dissuade further discovery violations and fraud on the Court."  Motion for

Sanctions [Doc. # 52] at pp. 13-15.

II.

"Destruction of evidence, or spoliation, is a discovery offense. . . ."  Gates, 167 F.R.D. at

101.  To ensure that discovery as permitted under Fed. R. Civ. P. 26(b)(1) is not rendered futile,

"litigants have a duty to preserve documents that may be relevant to pending or imminent

litigation."  Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo.

2007).  A court may impose sanctions for the destruction or loss of evidence.  Id.

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because

it knew, or should have known, that litigation was imminent, and (2) the adverse party was

prejudiced by the destruction of the evidence."  Turner v. Public Service Co. of Colorado, 563

F.3d 1136, 1149 (10th Cir. 2009) (internal quotation and citation omitted).  And, "if the

aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad

faith." Id.  In addition, spoliation sanctions are proper only where the lost or destroyed evidence

is relevant to a matter in dispute.  Janke v. Brooks, 2012 WL 1429246 *2 (D. Colo. April 25,

2012).

  The court in the Gates case analyzed at length the proper sanction to be applied when

evidence is destroyed or altered:

> Determination of the correct sanction for a discovery violation is a
> fact-specific inquiry, and in making such a determination trial
> courts are accorded broad discretion. . . .  After all, the imposition
> of sanctions is essentially a judgment call.  Thus, judicial decisions
> which are discretionary cannot be tied down to a fixed rule or
> formula.  If such were the case, courts would lose their flexibility
> in the sanctions process, and discretion would lose its meaning.
>
>      *  *  *
>
> The first factor of significant importance is that of the mental state
> of the alleged offender.  Where a particular destruction of evidence
> is found to have been prompted by a malicious intent, and has
> caused a high degree of prejudice, severe sanctions are easily
> supportable.  Where the circumstances are mixed, however, the
> course of action for a trial judge is not as easily determined.  As
> one Court noted, "[n]ondisclosure comes in different shapes and
> sizes: it may be accidental or inadvertent, or considerably more
> blameworthy," as where the nonproduction was "knowing and
> purposeful."  *Anderson v. Cryovc, Inc.*, 862 F.2d 910, 925 (1st Cir.
> 1988).  In some cases, a judge may find that an offender was
> motivated by malicious intent, but there was insufficient prejudice
> to warrant dismissal or default.  Or there may be circumstances
> where a party was merely negligent in the preservation of
> evidence, but the carelessness caused a high degree of prejudice in
> the case, and default judgment was warranted.  The factors of
> mental state and harm slide past each other in the wide variety of
> circumstances which are presented by different cases.  The concept
> of misconduct seems mutable: not every instance of nondisclosure
> merits the same judicial response.
>
>      *  *  *
>
> [S]erious sanctions are warranted in cases where the judge finds
> willfulness or bad faith.  This is so because actions which are
> found to be deliberate and purposeful ought to be punished
> accordingly.
>
>      *  *  *

14

> The second factor of significant importance is that of the degree of prejudice which has been caused by the conduct of the alleged offender.  Prejudice from the destruction of evidence can range from serious to modest.  In some cases, there may be no harm at all as a result of an opponent's loss or destruction of evidence.  In weighing and determining the appropriateness and severity of sanctions, judges should examine the materiality and value of the suppressed evidence upon the ability of a victim to fully and fairly prepare for trial.  On the one hand, where the destruction of evidence results in substantial impairment to a party's abilities to prepare for trial, serious sanctions might be warranted.  On the other hand, concealed evidence may turn out to be cumulative, insignificant, or of marginal relevance.  In such circumstances, dispositive sanctions would undoubtedly constitute an overreaction, but sanctions of less severity would perhaps be appropriate.

167 F.R.D. at 102-04 (internal quotations and citations omitted except as noted).

The aggrieved party must demonstrate "actual prejudice rather than theoretical prejudice. This requires some showing that the destroyed evidence would have been relevant to the claims or defenses in the case." Herrmann v. Rain Link, Inc., 2013 WL 4028759 *3 (D. Kan. Aug. 7, 2013).  Accord Gates, 167 F.R.D. at 104 (stating that the aggrieved party must establish "a reasonable possibility, based on concrete evidence rather than a fertile imagination that access t the lost material would have produced evidence favorable to his cause").

### III.

It cannot reasonably be disputed, and I find, that the defendants destroyed evidence by altering the profit and loss statements to eliminate certain detailed cost entries and to eliminate altogether the investor realized profits entries.  In addition, based on the contents of the Clark voice message, I find that the destruction and alteration of the evidence was done in bad faith and with a malicious intent.  Mr. Clark instructed Ms. Applehans to alter and destroy the evidence for the express purpose of evading the discovery requirements imposed by the Federal

Rules of Civil Procedure.

The more difficult questions are whether the deleted information is relevant to the plaintiffs' claims and the scope of any prejudice to the plaintiffs.

The evidence discloses that a properly prepared profit and loss statement would not include an investor realized profits entry. Under the undisputed evidence, the payments to partners made here were not guaranteed; do not constitute an expense; but are, instead, distributions of profits. Moreover, the evidence presented establishes that distributions of profits are not reported on profit and loss statements.

But that does not end the inquiry. To the contrary, Fed. R. Civ. P. 34 requires a party to produce responsive documents in its possession, custody, and control. It does not contemplate that a responding party will create new documents responsive to the request. Cartel Asset Mgmt v. Ocwen Financial Corp., 2010 WL 502721 *14 (D. Colo. Feb. 8, 2010) (noting that "a party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence"). And the rule against spoliation of evidence precludes the destruction or alteration of existing responsive documents and substitution of new, more favorable ones. Thus, although the defendants could not be required to create profit and loss statements that excluded improper entries, neither may they destroy existing documents which are responsive but which contain information not usually found on a profit and loss statement.

The plaintiffs argue that the deleted cost details are relevant to determining the compensation paid to chief instructors because that compensation, in at least one instance, is reported as a "profit commission" contained in the original profit and loss statement, Ex. 8, but is

16

deleted from the altered statement, Ex.13.  Spoliation Summation Brief [Doc. # 79] at pp. 6-7.

Elsewhere, in connection with the Plaintiffs' Renewed Motion to Compel [Doc. # 68], I am informed that the plaintiffs served a Request for Production No. 9 commanding the defendants to produce "[a]ny and all documents evincing payments to any Chief Instructors, including W2 or 1099 information for each instructor and weekly payroll reports for each instructor."  Defendants' Opposition [Doc. # 83] at p. 10.  The defendants responded:

> Defendants produced the monthly profit and loss statements for each United Partner entity and the QuickBooks check registries reflecting all payments (wages and expenses) to chief instructors. Defendants have looked for and have been unable to locate the 1099 information.  Defendants have contacted their tax preparer, Ron McCarthy, to obtain the 1099 information.  However, the amount of wages and addresses of chief instructors has been disclosed to plaintiffs.

Id.

Time worked by and wages paid to chief instructors are matters relevant to the plaintiffs' claims.  Significantly, however, the plaintiffs have not presented any evidence, nor do they argue, that this information is unavailable from other sources. Certainly the plaintiffs and other chief instructors filed tax returns which included, among other wage information, copies of their W2s and 1099s.  And the defendants assert in their Opposition that the "amount of wages . . . has been disclosed to plaintiffs."  Id.  See Turner, 563 F.3d at 1150 (finding no error in refusing to impose a spoliation sanction where the aggrieved party "had access to a significant amount of evidence" on the relevant issue).

The plaintiffs argue that the detailed "subcontractor" cost itemization, which is deleted from the altered profit and loss statements, reveals information about amounts paid to chief instructors for "sign up commissions" and the names of and wages paid to assistant instructors.

17

The plaintiffs claim that this information is relevant to the issue of whether the chief instructors are subject to the outside sales and executive exemptions of the FLSA.  Spoliation Summation Brief [Doc. # 79] at pp. 7-8.  Information concerning the chief instructors' sales and supervisory duties is in the possession of the chief instructors, however, based on their personal knowledge of those facts.

The plaintiffs argue that the deleted investor realized profits information is relevant to their alter ego and undercapitalization claims and "removal of investor names and profit distributions . . . prejudices [p]laintiffs because without this information, [p]laintiffs will not be able to show that Masters United entities receive a benefit from a Dojo's sales and operations regardless of the Dojo's profitability."  Id. at p. 4.  The plaintiffs have failed to present any evidence or persuasive argument that the same information is not available from another source, including the financial records of the Masters United entities themselves.

The plaintiffs argue that the altered profit and loss statements "show greater net profit for each Dojo" than do the original profit and loss statements.  "Therefore, [the altered] P&Ls show sufficient capitalization because investor profit distributions were entirely removed from" the altered versions.  Id. at pp. 4-5.  Profits and losses are distinct from an entities capitalization, however, and profit and loss statements are not relevant to that issue.

In summary, I find that the defendants have improperly and in bad faith destroyed and altered evidence, but the resulting prejudice to the plaintiffs is slight because either the information is available elsewhere or the probative value of the evidence is not great.  Consequently, it is impossible to fashion a proportional evidentiary sanction that would accurately target the discovery violation.  Under facts like these, courts impose monetary

Case 1:14-cv-00240-REB-NYW   Document 85   Filed 11/12/14   USDC Colorado   Page 19 of 20

sanctions sufficient to deter similar future misconduct and to make clear that the destruction or alteration of evidence is not tolerated.  See, e.g., Cache La Poudre, 244 F.R.D. at 635-36 (imposing monetary sanctions where evidence was destroyed but the opponent's ability to litigate the case has not been substantially prejudiced); United States v. Philip Morris USA Inc., 327 F. Supp. 2d 21, 26 (D. D.C. 2004) (imposing a monetary sanction where there is "no way of knowing what, if any, value" the destroyed evidence had, and it was "impossible to fashion a proportional evidentiary sanction").

I have considered the imposition of a civil penalty beyond the plaintiffs' reasonable expenses and attorneys' fees incurred in connection with the despoiled discovery.  The issue was addressed by the circuit court in Law v. National Collegiate Athletic Ass'n, 134 F.3d 1438 (10th Cir. 1998).  The authority to impose a monetary sanction beyond the fees and costs allowed under Fed. R. Civ. P. 37 lies in civil and criminal contempt.  Id. at 1441-42.  The pending motion does not seek relief in the form of a contempt order, and I did not follow applicable contempt procedures.  In any event, the monetary remedy available for a civil contempt is limited to compensating the plaintiffs for "losses or damages sustained by reason of noncompliance" and "must . . . be based upon evidence of complainant's actual loss."  Id. at 1442-43 (internal quotations and citations omitted).  The plaintiffs have neither identified nor proven any compensable damage suffered beyond the fees and costs in bringing their Motion for Sanctions.

IT IS ORDERED:

(1)     The Motion for Sanctions [Doc. # 52] is GRANTED.

(2)     As a sanction for their destruction and alteration of evidence, the defendants shall pay to the plaintiffs the plaintiffs' reasonable expenses, including attorneys' fees, incurred in

19

connection with the despoiled discovery.  The award includes the expenses and attorneys' fees incurred in promulgating Document Request # 2; reviewing the defendants' response to Document Request # 2; all Rule 7.1(a) conferences concerning Document Request # 2; investigating the defendants' response to Document Request # 2; preparing the Motion for Sanctions and all related briefs; and preparing for and attending the October 3 evidentiary hearing;

(3)     The award of reasonable expenses and attorneys' fees is made jointly and severally against all defendants (but not defense counsel).  The parties shall confer to reach an agreement on the amount of those expenses and attorneys' fees.  No later than December 15, 2014, the plaintiffs shall file a fee application in a manner consistent with D.C.COLO.LCivR 54.3 specifying the amount of the expenses and attorneys' fees claimed if, by that date, the parties have not agreed to the amount of the award and/or it has not been satisfied in full.

Dated November 12, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge