**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00240-REB-NYW

ZACH GEIGER,
ROBERT ABELARDO,
ADAM GOLDSTEIN, and
RYAN KING,

   Plaintiffs,

v.

Z-ULTIMATE SELF DEFENSE STUDIOS LLC,
PAUL TAYLOR,
KRIS ESZLINGER,
FRANK LEY,
HANS PROSCH,
MASTERS UNITED 11, LLC,
KATA 7, LLC,
Z-ULTIMATE MARTIAL ARTS SUPPLIES LLC,
Z-ULTIMATE SPECIALIZED ACCOUNTING LLC,
Z-ULTIMATE UNIVERSITY OF MARTIAL ARTS PROFESSIONALS LLC,
Z-ULTIMATE SULF DEFENSE STUDIOS,
MASTERS UNITED I LLC,
MASTERS UNITED 12 LLC,
MASTERS UNITED III LLC,
MASTERS UNITED V LLC,
Z-ULTIMATE EVENTS LLC,
A L MARTIAL ARTS, INC.,
WLC MANAGEMENT, INC.,
MASTERS UNITED VI LLC,
MASTERS UNITED 8 LLC,
MASTERS UNITED 15 LLC,
UNITED PARTNERS – BROOMFIELD LLC,
UNITED PARTNERS – CENTENNIAL LLC,
UNITED PARTNERS – CHICAGO #4 LLC,
UNITED PARTNERS – COLORADO SPRINGS 1 LLC,
UNITED PARTNERS – DENVER LLC,
UNITED PARTNERS – DENVER SOUTH LLC,
UNITED PARTNERS – FORT COLLINS LLC,
UNITED PARTNERS – GLENVIEW LLC,
UNITED PARTNERS – HIGHLANDS RANCH LLC,

UNITED PARTNERS – HIGHLANDS RANCH 2 LLC,
UNITED PARTNERS – KANSAS CITY #3 LLC,
UNITED PARTNERS – KANSAS CITY 1 LLC,
UNITED PARTNERS – KANSAS CITY #4 LLC,
UNITED PARTNERS – KEN CARYLE LLC,
UNITED PARTNERS – LAFAYETTE LLC,
UNITED PARTNERS – LAKEWOOD LLC,
UNITED PARTNERS – LEAWOOD LLC,
UNITED PARTNERS – LITTLETON LLC,
UNITED PARTNERS – LONGMONT LLC,
UNITED PARTNERS – OLATHE LLC,
UNITED PARTNERS – OVERLAND PARK NORTH LLC,
UNITED PARTNERS – OVERLAND PARK SOUTH LLC,
UNITED PARTNERS – PARKER LLC,
UNITED PARTNERS – SKOKIE LLC,
UNITED PARTNERS – SMOKEY HILL LLC,
UNITED PARTNERS – THORNTON LLC,
UNITED PARTNERS – WEST ARVADA LLC,
UNITED PARTNERS – WESTMINSTER LLC,
UNITED PARTNERS – WHEAT RIDGE LLC,
Z-ULTIMATE COLORADO SPRINGS,
Z-ULTIMATE DENVER,
Z-ULTIMATE HIGHLANDS RANCH EAST,
Z-ULTIMATE PARKER,
Z-ULTIMATE SMOKEY HILLS, and
WILLIAM CLARK,

     Defendants.

## ORDER REGARDING PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY, SECOND MOTION TO COMPEL DISCOVERY, AND MOTION FOR SANCTIONS AND CONTEMPT OF COURT

Magistrate Judge Nina Y. Wang

     This matter is before the court on Plaintiffs Zach Geiger, Robert Abelardo, Adam

Goldstein, and Ryan King's Renewed Motion to Compel Discovery, Second Motion to Compel

Discovery, and Motion for Sanctions and Contempt of Court (the "Motion").[1]   [#68, filed

September 26, 2014].   The Motion was referred to this Magistrate Judge pursuant to the Order

Referring Case dated January 29, 2014 [#4] and memorandum dated September 29, 2014 [#69].

This court has carefully considered the Motion and related briefing, the entire case file, the

comments offered by the Parties during the March 2, 2015 Motion Hearing, as well as applicable

case law.  For the following reasons, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, martial arts instructors formerly associated with Defendants, filed their

Complaint on January 28, 2014 on behalf of themselves and other allegedly similarly situated

individuals seeking back pay and other damages allegedly owed under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  [#1].[2]  On February 5, 2014, Plaintiffs amended their

Complaint to raise six claims for relief: (1) a declaration that the plaintiffs are "classified

employees under state and federal law"; (2) for violation of the FLSA by failing to pay wages at

least equal to the minimum wage plus overtime compensation; (3) for fraud in classifying the

plaintiffs as independent contractors rather than employees; (4) for negligent misrepresentation

based on the independent contractor classification; (5) for civil conspiracy to improperly classify

the plaintiffs as independent contractors; and (6) to pierce the corporate veil based on alter ego

and undercapitalization.  [#22].

An explanation of Defendants' corporate structure is helpful for supplying context to the

---

[1] While filed as a single motion, Plaintiffs arguments actually involve different categories of documents, subject to different obligations, as suggested by the title of the Motion.  The court will discuss each of the categories below.

[2] Plaintiffs and those who shared their position held the title of "Chief Instructor."

pending motion.   In September 2010, a number of the individual Defendants severed their relationship with United Studios of Self Defense, Inc. and formed Z-Ultimate Self Defense Studios, LLC ("Z-Ultimate"), which is the licensor of the Z-Ultimate name.   Z-Ultimate studios are independently owned and operated and a significant number of them were formed as United Partner limited liability companies, typically identified by location of the studio.   [#49-1 at ¶ 7].   Each United Partner entity is responsible for paying the instructors it employs.   [*Id.* at ¶ 19].   Defendants Eszlinger, Prosch, and Clark hold ownership interests in several studios through the use of limited liability companies organized as "Masters United [number] LLC," which are organized by state.   [#49 at 2].   Defendants represent that Z-Ultimate is not a parent company to the Masters United entities or the United Partner entities, does not employ martial arts instructors or keep records, and does not recruit, hire, schedule for work, supervise, fire, or pay instructors.   [*Id.*]

Defendants filed an Answer to the Amended Complaint on February 28, 2014.   [#25].   Plaintiffs filed an Unopposed Motion to Dismiss Masters United X, Inc. on June 24, 2014, which District Judge Blackburn granted the same day.   [#31, #32].   On July 8, 2014, Magistrate Judge Boland held a Scheduling Conference at which he ordered the Parties to complete discovery by January 9, 2015 and file dispositive motions by February 9, 2015.   [#36, #37].

On July 29, 2014, Plaintiffs filed their "First Motion to Compel Discovery" taking issue with Defendants' responses to Interrogatories 1-4 and Requests for Production 1-10.   [#43].   On August 5, 2014, Plaintiffs filed a "First Motion for Joinder of Additional Z-Ultimate Defendants," seeking leave to join an additional 83 entities as Z-Ultimate Enterprise Defendants.   [#46].   On August 20, 2014, Plaintiffs filed a Motion for Temporary Restraining Order and Order

for Spoliation Sanctions, seeking entry of default or, alternatively, an adverse jury instruction on the basis that certain Z-Ultimate Profit and Loss Statements were altered prior to being produced during the discovery process.  [#52]  Defendants filed a Response to that Motion the same day. [#54].  Judge Blackburn denied Plaintiffs' request for a temporary restraining order [#57] and referred the issue of spoliation to Judge Boland.  [#59].

On August 21, 2014, Judge Boland held a Motion Hearing on Plaintiffs' Motion to Compel and Motion for Joinder.  He granted Plaintiffs' Motion to Compel to require (1) "full answers to Interrogatories 3 and 4," and (2) "production of all documents responsive to Requests for Production 1, 2, 3, 4, 5, 6, 7, 8, and 9," to be produced on or before September 5, 2014; and he awarded Plaintiffs their reasonable expenses incurred in submitting the Motion to Compel. [#56].  He also granted Plaintiff's Motion to Join, thereby increasing the total number of named Defendants in this action to 116.[3]  [*Id.*]  Plaintiffs filed a Motion for Conditional Collective Action Certification and Notice Approval on August 27, 2014.  [#62].  Judge Blackburn granted that Motion for Conditional Collective Action Certification on March 10, 2015 [#110], and on March 30, 2015, Defendants filed a List of Chief Instructors from March 20, 2011[4] to the present.[5]  [#113].

On September 26, 2014, Plaintiffs filed the pending Motion.  [#68].  The Original

---

[3] Hereafter, until further qualified, the Defendants named prior to the court's Order Granting Plaintiffs' Motion for Joinder will be referred to as the "Original Defendants."

[4] Judge Blackburn denied Plaintiffs' Motion for Equitable Tolling [#111], and determined that Plaintiffs could provide Notice of Collective Action Lawsuit to persons employed as Chief Instructors from March 10, 2011 to the present.

[5] The Parties also filed a Status Report on March 26, 2015, indicating that they are still awaiting the court to set deadlines for the remainder of discovery in the case.  [#112].  With the issuance of this Order, the court has set a further discovery conference.

Defendants filed a Response on October 17, 2014 ("Response") [#83], and Plaintiffs filed their Reply on October 31, 2014. [#84].

On October 3, 2014, Judge Boland held an evidentiary hearing on Plaintiffs' Motion for Spoliation Sanctions, took the motion under advisement, and instructed the Parties to submit written closing arguments. On November 12, 2014, Judge Boland granted the Motion, finding that the "evidence clearly establishes" that the Profit and Loss Statements were altered in bad faith. The court found, however, that the resulting prejudice to Plaintiff was slight because either the information was available elsewhere or the probative value of the evidence was not great, and therefore sanctioned Defendants in the form of payment for Plaintiffs' reasonable expenses incurred in connection with the despoiled discovery. [#85].

On December 10, 2014, Judge Boland held a Status Conference at which he vacated the deadlines for completing discovery, filing dispositive motions, and disclosing expert witnesses, ordered the Parties to file a status report within ten days of a ruling by Judge Blackburn on Plaintiffs' Motion for Conditional Collective Action Certification, and ordered the Parties to file a motion by December 18, 2014 to vacate and/or reset the Trial Preparation Conference and Final Pretrial Conference and trial. [#96]. The Parties filed the Motion to Vacate on December 18 [#101], which is currently pending.

On February 9, 2015, this action was reassigned to the undersigned Magistrate Judge. [#107]. On March 2, 2015, I held a hearing on the pending Motion that extended approximately three hours. I took the Motion under advisement and ordered Mr. Francis, defense counsel, to provide a Notice of Representation identifying all named Parties whom he represents. [#108]. On March 6, 2015, counsel submitted that Notice [#109], which indicates that of the 122 named

Defendants, counsel of record represents 99.[6]

In their Motion, Plaintiffs' arguments center around three categories of discovery requests:  (1) the discovery requests that were subject to Judge Boland's August 21 Order [#56]; (2) discovery requests that were due just prior to the filing of the instant Motion; and (3) discovery requests and subpoenas that were due just after the filing of the instant Motion

---

[6] Mr. Francis and his co-counsel, Mr. Glenn, note in their Notice of Representation that "numerous of these entities have been closed or merged into other entities."  [#109].  According to the Notice, defense counsel do not represent the following 23 Defendants: United Partners-Layton LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company; United Partners-Sandy LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company; United Partners-South Jordan LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company;  United Partners-South Ogden LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company;  United Partners-Utah LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company;  United Partners-West Jordan LLC d/b/a Z-Ultimate Self Defense Studios is a Utah limited liability company;  United Partners-Anaheim Hills LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company;  United Partners-Branford LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United-Partners-Campus LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Clairemont LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Corona LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company;  United Partners-Danville LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Dublin LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company;  United Partners-Encino LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Hacienda Heights LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Layton LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Mira Mesa LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Point Loma LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Portola Hills LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-San Mateo LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-South Ogden LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; United Partners-Tierrasanta LLC d/b/a Z-Ultimate Self Defense Studios is a California limited liability company; and United Partners-Vista LLC (the "Unrepresented Defendants").  To date, no counsel has entered his or her appearance on behalf of these Unrepresented Defendants.

("September 28 Discovery"). At the March 2 hearing,[7] the court entertained argument on all three categories of documents, because Defendants responded to arguments related to the third category [#83, at 13-14] and Plaintiffs then replied [#84].

Having now set out the framework of the instant discovery disputes, the court turns to their disposition.

## ANALYSIS

### A.    Unrepresented Defendants

As an initial matter, the docket for this action indicates that the corporate Defendants joined pursuant to the August 21 Order have not been served and no attorney has entered an appearance on their behalf.   A corporation cannot appear *pro se*.  *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03 (1993).  *See also Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) (explaining that a corporation may only "appear in court through an attorney and not through a non-attorney corporate officer appearing pro se.").  To the extent Mr. Francis and Mr. Glenn represent Defendants for which they have not entered an appearance, they are directed to do so.  As for the Unrepresented Defendants, there is no indication that Plaintiffs have properly served any of these Unrepresented Defendants even

---

[7] Prior to the hearing, Plaintiffs hand-delivered a notebook of exhibits to Chambers for the court to consider that included both documents produced in discovery as well as summary exhibits. While Plaintiffs' counsel certainly intended to be helpful, some of the documents included in the notebook were not exhibits to the underlying motion.  Plaintiffs also did not seek leave of court to supplement their papers with these additional documents, or the Power Point presentation offered at the hearing which, in certain instances, refers to these extraneous exhibits, and it is unclear when Defendants were provided notice that these documents would be part of the motions hearing.  There is no argument that these documents were unavailable to Plaintiffs during the briefing on this instant Motion.  Accordingly, the court will not consider any document that was not submitted as an exhibit to the filed motion papers, as they are not properly before the court.

after Defendants' Notice of Representation filed on March 6, 2015.   [#109].   Plaintiffs are instructed to effect proper service no later than April 15, 2015, so that such Unrepresented Defendants may enter this action and respond to Plaintiffs' Amended Complaint.[8]  To the extent Plaintiffs fail to file the appropriate returns of service with the Clerk's Office by that date, Plaintiffs are ordered to show cause why such Unrepresented Defendants should not be dismissed for lack of proper service under Rule 4(m) of the Federal Rules of Civil Procedure.

## B.    Outstanding Discovery

As the Parties in this matter are well aware, Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."   This Rule permits "party-controlled" discovery "regarding any non-privileged matter that is relevant to the claim or defense of any party" and "court-permitted" discovery upon a showing of good cause of "any matter relevant to the subject matter involved in the action." *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1188 (10th Cir. 2009).   Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  *See, e.g., Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan. 2001).

However, all discovery is subject to the proportionality limitations imposed by Rule 26(b)(2)(C).  *See* Fed. R. Civ. P. 26(b)(1).  Therefore, while the court may order discovery of any matter relevant to the issues involved in the action, it "*must* limit the frequency or extent of

---

[8] Hereafter, I refer to the Original Defendants and those whom defense counsel purport to represent as "Defendants"; all others I refer to as the "Unrepresented Defendants."

discovery" under certain circumstances. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (emphasis added). It is incumbent upon the court to consider how much discovery is reasonable in a given case in light of the claims and defenses asserted, the significance of the discovery sought to the propounding party, and the costs and burden to the producing party. *See id.* The Federal Rules of Civil Procedure also permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c).

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.,* 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted). In moving to compel further answers, the burden is on the proponent of additional discovery to prove that the opposing party's answers are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir. 1976) ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete"). The Advisory Committee Note to the 2000 Amendment to Rule 26(b)(1) directs courts to involve themselves in discovery disputes to determine whether discovery is relevant to the parties' claims or defenses, and if not, to determine whether "good cause exists for authorizing it so long as it is relevant to the subject matter of the action."

1.      Renewed Motion to Compel

Judge Boland ordered (1) full answers to Interrogatories 3 and 4, and (2) production of all documents responsive to Requests for Production 1, 2, 3, 4, 5, 6, 7, 8, and 9.  [#56, the "August 21, 2014 Order"].  Defendants were required to produce these answers and documents on or before September 5, 2014.  *Id.*

Plaintiffs assert that following the August 21, 2014 Order, they discovered new information demonstrating that Defendants' response to Interrogatory 1 is incomplete, and ask the court to revisit their Motion to Compel as to this Interrogatory.  Plaintiffs further assert that Defendants have failed to comply with the August 21, 2014 Order as to Interrogatories 3 and 4, and Requests for Production 2, 3, 4, 5, 6, 7, and 9.  Defendants argue that they have complied with the August 21, 2014 Order to the best of their ability and that Plaintiffs are abusing the discovery process.

**Interrogatory No. 1** asked Defendants to "[i]dentify and list the name, address, telephone and email contact information for any bookkeeper or accountant who has performed work for a Z-Ultimate entity, including which entity they worked for and for what time period." Originally, Defendants responded by identifying Heidi Applehans; Shvonne Avalos; Annette Gomez; Niza Guerrero; Molly Ashworth; Jordan Penman; James Herzog; Bill Sampson; Chris Diaz; Todd Aimer; David Lloyd; Dennis Brookman; Mike Millard; Alen Babyan; and Juan Flores.  [#68-1 at 16-17].[9]

Plaintiffs claim that subsequent investigation has revealed Defendants hid or withheld identities of bookkeepers and accountants.  For support, Plaintiffs rely on deposition testimony

---

[9] These page numbers refer to the ECF page numbers assigned after filing, as the individual exhibits were filed collectively in one larger exhibit.

given in a different matter by Shavonne Avalos, a bookkeeper for an accounting company owned and operated by Defendant Eszlinger. [#68 at 3-4]. Defendants respond that they provided the names and addresses of the bookkeepers and accountants for all of the Defendants, including the recently hired Debbie Nash, that the court already ruled that their response was sufficient, and that Ms. Avalos's two-year old testimony does not identify the name of another bookkeeper. [#83 at 4]. In addition, Defendants affirmatively represent to the court in their paper that "There are no other bookkeepers." [*Id.*]

A review of the cited testimony does not support Plaintiffs' argument that Ms. Avalos "stated that Defendants use separate bookkeepers or accounts for their Masters United entities, as well as for some of their other supporting business entities." [#68 at 4; #68-1]. Rather, Ms. Avalos testified that she did not do accounting for any other Z-Ultimate or Kris Eszlinger related entities, other than Black Ink. [#68-1, at 39:3-10; 65:21-25; 76:23-77:11]. In addition, this testimony was taken of Ms. Avalos in 2012 in a different matter, and it is unclear to this court whether Ms. Avalos was ever asked about the specific Defendants named in this action. [*Id.*] Plaintiffs' arguments amount to an assumption that there must be more bookkeepers, but the record before the court does not currently support an affirmative finding that there are additional bookkeepers. Therefore, Plaintiffs' Motion with respect to Interrogatory No. 1 is denied.

In reaching this determination, however, the court expressly relies upon the representations made by Defendants pursuant to Rule 26(g)(1)(B) of the Federal Rules of Civil Procedure and defense counsel pursuant to Rule 11(b) of the Federal Rules of Civil Procedure and reminds Defendants and defense counsel of their continuing obligations of supplemental disclosure under Rule 26(e) of the Federal Rules of Civil Procedure. That Rule clearly obligates

a party who has responded to an Interrogatory to supplement or correct its response in a timely manner if the party learns that in some material respect, the response is incomplete or incorrect, or the corrective information has not otherwise been made known during discovery.  Fed. R. Civ. P. 26(e)(1).  This obligation extends to all of the Defendants represented by Messrs. Francis and Glenn.

**Interrogatory No. 3** asked Defendants for "any communication or discussion between any defendant and any employee concerning this lawsuit, any subject in this lawsuit, the plaintiffs, or their counsel."  The Interrogatory asked Defendants to "provide details of (1) what was communicated, (2) who communicated it, (3) to whom was it communicated, and (4) when this communication took place including any notes evidencing this communication."

Plaintiffs claim that Defendants have provided "a cursory answer for Defendant Clark, but no answer whatsoever for any of the other Individual Defendants."  [#68 at 4].  Defendants respond that the other individual Defendants have not discussed this lawsuit or the allegations of the lawsuit with instructors "because plaintiffs' counsel has alleged that the defendants have engaged in witness intimidation."  [#83 at 18].

Neither Party appears to have provided the court with a copy of either Interrogatory No. 3, or the response thereto, as part of the motions papers.  While Plaintiffs cite Ex. D to their Motion [#68 at 4], that exhibit contains no response to Interrogatory No. 3.  [#68-1 at 18].  Therefore, the court has nothing to consider with respect to the sufficiency of the response, and Plaintiffs' Motion as to Interrogatory No. 3 is denied.

**Interrogatory No. 4** asked Defendants to "List every entity ("United Partner" or otherwise) associated with any Defendant that employed a Chief Instructor from April 1, 2005

(including the entities physical address, current mailing address, email, phone number, and dates of operation); and fully describe their ownership, management, and relation to any of the named Defendants."

Plaintiffs claim that Defendants' revised response to this Interrogatory is contradictory, and incomplete in the sense that none of the entities list owners other than Z-Ultimate Defendants or employees "even when listing their ownership at only 50%." [#68 at 5]. Defendants respond that they submitted detailed supplemental responses to this Interrogatory as well as to Interrogatory No. 5 listing every Defendant that employed a Chief Instructor along with the accompanying physical address, current mailing address, email, telephone number, and dates of operation. [#83 at 5-6]. Defendants represent that a number of entities are no longer in operation and those studios have closed, and they have disclosed the owners of the 110 entities including names and addresses of investors as well as operating agreements for the entities. [*Id.* (citing #83-2 and #83-3)].

In reviewing Defendants' Supplemental Responses to Plaintiffs' Interrogatory No. 4, it is clear that the responses are incomplete, in many cases, even for entities that are represented by Defendants. [#68-1 at 25].   For example, as Plaintiffs point out, Defendants identify A L Martial Arts but do not include a physical address, mailing address, email, or telephone number. [#68-1 at 28]. Ms. Anita Ronzone is identified as the Chief Instructor. [*Id.*] Presumably, Plaintiffs seek this information in order to identify individuals who might have discoverable information about Defendants' actions, and who may be similarly situated to the named Plaintiffs. In Defendants' March 30 submission, Defendants identify 119 Chief Instructors from March 20, 2011 to the present. [#113]. It is therefore unclear what marginal value Plaintiffs would gain from further

14

supplementation of the response to Interrogatory No. 4.  Nevertheless, the court will order Plaintiffs to identify no later than April 13, 2015 any entity to which it seeks additional information in response to Interrogatory No. 4, and Defendants will have until April 24, 2015 to supplement their Response to Interrogatory No. 4.

**Request for Production No. 2** sought "Monthly Profit and Loss statements from all Z-Ultimate entities from 2010 to present date."

Plaintiffs claim that while Defendants have produced documents responsive to this request for many of the named Defendant entities, Plaintiffs' counsel has discovered Z-Ultimate entities for which Profit and Loss Statements for the relevant time period have not been produced.  [#68 at 5].  Specifically, Plaintiffs' counsel is aware of "brand new 'Ultimate Partner' LLCs as well as 'Z-Masters Development Group 1 LLC' that were formed by Defendants as recently as August 7 of this year."  [#68 at 5].

Defendants respond simply that they produced all documents responsive to this Request. They argue the examples used by Plaintiffs are irrelevant to the Request because one entity, American Bunkai Brothers LLC, operated and closed prior to the formation of Z-Ultimate Self Defense Studios, LLC; and the other entity, KE Horsepower LLC, had a powerboat as its sole asset and that asset was sold "years ago" as a result of Defendant Eszlinger's divorce.  [#83 at 6]. Furthermore, KE Horsepower LLC was "cancelled years ago and was not a Z-Ultimate entity." *Id.*

To the extent they have not been produced, the court orders Defendants to produce all monthly profit and loss statements for the time period of March 10, 2011 to the present for all Defendants, regardless of whether or not the entity is still in existence.  Under Rule 34 of the

Federal Rules of Civil Procedure, a party has the obligation to produce relevant, non-privileged documents that are in a party's possession, custody or control if the party has actual possession, *or* has the legal right to obtain the documents on demand. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 627 (D. Colo. 2007). The court notes that defense counsel indicated during the hearing that such records for defunct entities may be difficult to find, and the court cannot compel what does not exist. *See Smith v. Pizza Hut*, 2013 WL 1751850, at *3 (D. Colo. Apr. 23, 2013) (J. Boland). Nevertheless, Defendants must conduct a reasonable, good faith search for such documents and shall file a certification pursuant to Rule 26(g) and Rule 34 of the Federal Rules of Civil Procedure, no later than April 24, 2015, that their production is complete with respect to Request for Production No. 2, or if it is not, state the reasons why it is not complete and the anticipated date of completion.

**Request for Production No. 3** sought "Any and all corporate formation documents for all Z-Ultimate entities, including any investor or instructor ownership agreements."

Plaintiffs claim that while Defendants have produced documents responsive to this request, Plaintiffs' counsel has discovered newly created Z-Ultimate entities for which responsive information has not been produced. [#68 at 5]. Defendants did not address this Request for Production in their Response [#83 at 6], but at hearing, defense counsel continued to suggest that some entities were not in existence or were not related. Again, Defendants must conduct a reasonable, good faith search for all responsive documents for Defendants, and produce all documents no later than April 24, 2015.

**Request for Production No. 4** sought "Any and all documents evincing the formation, ownership, purpose, function, membership, rules, bylaws or governance of the Board of Masters,

Kenpo Lineage Association, and Z-Ultimate Self Defense Studios, Inc."

Plaintiffs claim that Defendants have produced no additional documents responsive to this request other than screenshots from the Kenpo Lineage Association's website that they produced in response to Plaintiff's first Motion to Compel. Defendants respond that they provided the corporation formation documents for Z-Ultimate Self Defense Studios LLC, and that they are "unaware of any documents relating to the formation, ownership, rules, bylaws or governance of the Board of Masters or Kenpo Lineage Association." [#83 at 7]. Defendants represent that the Board of Masters is not an entity. "Master" is the title provided to high ranking martial artists and those holding the title determine which instructors and students are qualified to receive a higher rank. Defendants further represent that the Kenpo Lineage Association offers periodic seminars "to teach traditional kenpo techniques to students with select kenpo masters," and the screenshot is the only document they have regarding this Association. *Id.*

As discussed above, the court takes Defendants' representation that there is no additional material in their custody and control that is responsive to this request.

**Request for Production No. 5** sought "Any and all documents evincing the pricing of lessons memberships, martial arts supplies, or any other good, product, or service offered to the public by any Z-Ultimate entity."

Plaintiffs claim that while Defendants have produced one document from September 2010 listing pricing (#68-1 at 49, Ex. H "Z-Ultimate Rate guide"), they "recently sent out an email with new pricing rates for all studios effective September 1, 2014." [#68 at 6]. This email from Defendant Ezslinger reads, "PLEASE NOTE: This Version is 09.01.14FINAL. The Z-

17

Ultimate Rate Schedule in the Slayer'zzz Convention Workbook was for *REVIEW & TRAINING PURPOSES ONLY* and did NOT have the updated INDIVIDUAL PRIVATE LESSON BLOCKS prices and savings included." [#68 at 6] (citing #68-1 at 51-52, Ex. I "Rate email").

Defendants respond that a draft or updated lesson price list in not relevant to the issues in this case: misclassification of chief instructors as independent contractors and minimum wage and overtime violations. Defendants argue that prior suggested lesson pricing was supplied to Plaintiffs, and a draft version of any updated list is not relevant to Plaintiffs' theory of "Enterprise liability," conspiracy, or piercing the corporate veil. [#83 at 8]. Furthermore, Chief Instructors "were/are free to determine the pricing charged for lessons and selected their own hours," and "were paid exclusively by the studio entities which own the individual martial arts studios." *Id.* Defendants maintain that Chief Instructors were not employed or paid by Z-Ultimate Self Defense Studios LLC or the Masters United entities. *Id.* At the hearing, Plaintiffs argued that the pricing lists, if any, would demonstrate control over the Chief Instructors, thereby being probative as to whether the Chief Instructors were treated as employees or independent contractors. The court notes that Defendants did not seem to dispute the existence of such lists, but the relevance.

Judge Boland already passed on the relevance of Request for Production No. 5, when he ordered that Defendants produce all documents responsive to Request for Production 5, and I will not revisit the issue now. Defendants are ordered to produce all responsive documents to this request no later than April 24, 2015.

**Request for Production No. 6** sought "Any and all documents evincing any licensing agreement for use of the Z-Ultimate, Board of Masters, Kenpo Lineage Association or any other

associated name and payments therefore."

Plaintiffs claim that Defendants have produced in response, "'Marketing and Consulting Agreements' for six Z-Ultimate locations that make no mention of or contain a provision for licensing." [#68 at 6] (citing #68-1 at 53-58, Ex. J "Management and Consulting Agreements"). Defendants respond that Z-Ultimate does not execute license agreements with the Defendant entities, and that the Board of Masters and Kenpo Lineage Association likewise do not hold written licensing agreements. Defendants assert that "[t]he payments paid to Z-Ultimate and the Masters United entities are listed on the monthly profit and loss statements for the studio entities as well as the profit and loss statements for Z-Ultimate Self Defense Studios LLC and the Master United entities which were produced to the Plaintiffs." [#83 at 9].

Defendants' position is unavailing. Given the continuing issues with respect to the monthly profit and loss statements, and the fact that information sought regarding the payments made to Z-Ultimate and Masters United entities may be reflected differently on different documents, Defendants may not circumvent the court's August 21 Order which explicitly provided that Defendants would produce all documents responsive to Request for Production No. 6, not simply documents Defendants deemed to be sufficient. Defendants are ordered to produce all responsive documents to this request no later than April 24, 2015.

**Request for Production No. 7** sought "Any insurance policy purporting to cover any Z-Ultimate entity or any portion of their business, employees, or any property owned, co-owned, or registered on their behalf."

Plaintiffs claim that while Defendants produced general insurance policies for the studios, policies regarding "several cars and trucks" registered to Z-Ultimate entities and listed as line

items on Profit and Loss Statements were not produced.  [#68 at 6].  Defendants respond that

they submitted documents responsive to this Request, and that the "cars and trucks" Plaintiffs

refer to were sold years ago, Defendants did not retain copies of the canceled insurance policies

for those vehicles, and the inquiry is not relevant.  [#83 at 9].  Finally, Defendants state the

amount spent on vehicles was disclosed in the production of Profit and Loss Statements for WLC

Management, Inc., and question how an insurance policy for a vehicle is relevant to the

classification of chief instructors as independent contractors and the failure to pay wages.  *Id.* at

10.

   The court understands Defendants' representations pursuant to Fed. R. Civ. P. 26(g) to

amount to an assertion that there are no additional responsive documents.  [#83 at 9 ("Defendants

produced copies of all insurance policies that they have related to businesses, employees or

property.")]  As discussed above, Judge Boland already considered the issues of relevance in the

context of his August 21 Order.  Therefore, Defendants are required to file a certification

pursuant to Rule 26(g) and Rule 34 of the Federal Rules of Civil Procedure no later than April

24, 2015 that all responsive documents have been produced.

   **Request for Production No. 9** sought "Any and all documents evincing payments to any

Chief Instructors, including W2 or 1099 information for each instructor and weekly payroll

reports for each instructor."

   Plaintiffs claim they have received no information regarding this Request since the

August 21, 2014 Order.  Defense counsel responds he was advised by his clients that two of their

bookkeepers, Shavonne Avalos and Annette Gomez, have no 1099 forms in their possession.  He

was further advised that Defendant Clark is unable to locate the 1099 forms for any Colorado

instructors. Finally, Defendants state they have produced the monthly Profit and Loss Statements for each United Partner entity and "the QuickBooks check registries reflecting all payments (wages and expenses) to chief instructors." [#83 at 3, 10].

The record indicates there are 1099 Forms, and at the hearing, defense counsel conceded that 1099 Forms reflecting wage information should exist. Defendants further indicate they have asked their tax preparer, Ron McCarthy, to obtain the 1099 Information. Defendants have an obligation under the Federal Rules of Evidence to produce responsive documents within their possession, custody or control, or that they are legally entitled to obtain such documents. *Cache La Poudre Feeds, LLC*, 244 F.R.D. at 627. There is no question that Defendants are legally entitled to obtain their own tax information, and there is no explanation as to why it has not been obtained from their tax preparer or Defendants' efforts to do so. [#83 at 10]. Defendants are ordered to produce the tax information requested by Request for Production No. 9 no later than April 24, 2015.

**Sanctions.** Plaintiffs contend that Defendants have violated the discovery process and failed to comply with the court's Order, and that those transgressions warrant finding Defendants in contempt of the August 21, 2014 Order, in addition to a multitude of other severe sanctions, including:

1. Appointing a Discovery Master, to be paid by Defendants;

2. Entering default judgment that Defendants failed to pay Chief Instructors minimum wage plus overtime;

3. Entering default judgment that Defendants misclassified the Chief Instructors;

4. Entering default judgment that the FLSA imposes enterprise liability;

5. Entering default judgment that Defendants engaged in civil conspiracy;

6. Entering default judgment that the various Business Entity Defendants are the alter egos of the Individual Defendants;

7. Entering default judgment that the Individual Defendants undercapitalized the various Business Entity Defendants;

8. Entering default judgment that Defendants engaged in interstate commerce;

9. Entering default judgment that Defendants do more than $500,000 per year;

10. An award of costs and reasonable attorney fees to Plaintiffs for bringing this motion; and

11. Imposing monetary penalties sufficient to dissuade further discovery violations.

Defendants argue that it would be inappropriate for the court to hold them in contempt. In the August 21 Order, Judge Boland declined to subject Defendants to a civil penalty beyond the reasonable expenses and attorney fees Plaintiffs incurred in connection with the despoiled discovery on the basis that the authority to do so lies in civil and criminal contempt and Plaintiffs did not seek such relief in their Motion to Compel.  [#85].

"Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."  *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1438 (10th Cir. 1998) (quoting *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949)).  "Criminal contempt is a crime in the ordinary sense…" *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 826 (1994) (quotations and citation omitted).   An order requiring a payment that is neither compensatory nor avoidable by complying with the order is essentially a

criminal penalty (*Law*, 134 F.3d at 1443) and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Bagwell*, 512 U.S. at 826.

The Motion does not specify the nature of the contempt charge sought, though it does ask the court to "impose monetary penalties sufficient to dissuade further discovery violations," which could be interpreted by Defendants as seeking monetary sanctions above the reasonable "attorneys' fees and expenses" expressed in the last paragraph of Rule 37(b)(2), and thus a criminal contempt charge. *See Law*, 134 F.3d at 1444. However, I did not indicate at the March 2 hearing on the Motion that Defendants may be subjected to a criminal contempt order.

Pursuant to Rule 37(b)(2), the court may sanction a party for its failure to obey a discovery order. Judge Boland's August 21 Order unequivocally directs Defendants to produce all documents responsive to Requests for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 9 on or before September 5, 2015. It did not grant Defendants leave to re-argue the relevancy of the Requests, nor substitute their own judgment with respect to what they were willing to produce. The court declines to treat Defendants' failure as contempt of court at this time, but expressly puts Defendants on notice that any continued recalcitrance with engaging in the discovery process in good faith may lead to more severe sanctions. Rather, pursuant to Rule 37(b)(2)(C), the court awards reasonable expenses and attorney's fees to be paid to Plaintiffs in connection with the portion of the instant Motion that relates to the Renewed Motion to Compel.[10]   This award is made jointly and severally against Defendants and their lawyers. The Parties shall confer to

---

[10] To the extent that Plaintiffs' counsel's records do not clearly delineate what efforts were directed at the Renewed Motion to Compel, as opposed to the issues first raised in the instant Motion, Plaintiffs are directed to simply calculate a one-third *pro rata* share of the expenses and attorney's fees.

reach an agreement on the amount of those expenses and attorney's fees. No later than May 8, 2015, Plaintiffs shall file a fee application in a manner which complies with the requirements of D.C.COLO.LCivR 54.3 specifying the amount of the expenses and attorney's fees claimed if, by that date, the Parties have not agreed to the amount of the award and/or it has not been fully satisfied.

      2.    <u>Motion to Compel Discovery Sought Subsequent to August 21 Order</u>

As an initial matter, Plaintiffs' Motion to Compel Discovery that came due after the filing of the instant Motion is premature and sought, from one perspective, an advisory opinion. Nevertheless, in an attempt to streamline the resolution of discovery disputes in this case, and because the Parties discussed these categories of documents at the March 2 hearing, the court will rule on this portion of the Motion instead of striking it.  The Parties are advised, however,

      a.    Discovery Due September 14, 2014

Plaintiffs state that following the August 21 Order, they propounded additional discovery requests and served multiple subpoenas, and that Defendants have failed to answer, failed to provide complete answers, and have provided false answers to two interrogatories, one request for production, and four subpoenas.  Defendants' responses were due September 14, 2014.

**Interrogatory No. 5** asked "For every Individual Defendant (Taylor, Clark, Eszlinger, Ley, Prosch): List every company, corporation, partnership, trust, organization or other business entity to which you are a member, belong to or had any part in creating, managing, governing, controlling, or from which you directly or indirectly have received profits. This includes, but is not limited to, every Z-Ultimate and Z-Ultimate related entity, every Masters United entity, every United Partner entity, every studio or dojo, the Board of Masters, the Kenpo Lineage

Association, and every entity that provides services to any of the above. Include every D.B.A. of such entity, and describe fully its ownership, governance, and profit structure, including the identity of any other investors, members or partners. If such other investors, members, or partners are also business entities, identify the individuals who are part of, created, manage, or govern those entities. For every person or business entity identified in this interrogatory, include name, address, phone number, email, year of creation, and any D.B.A. under which business has been done."

Plaintiffs claim that while Defendants produced a list that included the Defendant entities, they are aware of more than a dozen other Z-Ultimate entities not included on that list. Plaintiffs assert that following a conferral, Defendants submitted minor amendments to the list but still failed to provide complete information and state by example that Defendants purportedly failed to list trusts or partnerships to which individual Defendants belong or which they own. Defendants respond that they have fully answered this Interrogatory to the best of their ability. They provided a Second Supplemental Response that lists every entity disclosed to counsel [#83-3]; one entity, of which counsel was unaware, was formed by Defendant Clarke in August 2014 and has not operated; American Bunkai Brothers LLC was disclosed in discovery responses as an entity that operated and closed prior to formation of Z-Ultimate Self Defense Studios, LLC in 2010; and KE Horsepower LLC was formed by Defendant Eszlinger to own a powerboat, was cancelled several years ago, and was not a Z-Ultimate entity. [#83 at 11]. Finally, Defendants argue that not all of the Ultimate Partner entities are owned or controlled or employ Chief Instructors. In their Reply, Plaintiffs persist that information has not been produced regarding newly discovered entities such as Stone Dragons LLC, Leopard's Paw, and WLC Management

Profit and Trust.  [#84 at 6] (citing #84-1 at 36, Ex. E, "Bookkeeper Email").

On its face, Interrogatory No. 5 is overly broad, and fails to articulate any nexus between the discovery request and the claims asserted in this case.  Therefore, the court denies Plaintiffs request to compel further response to Interrogatory No. 5 at this time.

**Interrogatory No. 6** asks Defendants to identify "every individual who has been employed as a Chief Instructor by any United Partner entity or its equivalent at any time since 2005. List the location or locations they worked at and the dates of their employment. Include their full name, last known address, email address, and telephone number."

Plaintiffs claim the information provided in response to this Interrogatory is incomplete, and could be easily supplemented by the 1099s that Defendants have not produced.  Defendants respond that they have diligently sought to provide the names, addresses, and telephone numbers for all chief instructors for all entities since 2005, and that invalid contact information is the result of many of these instructors relocating to different cities and states.

Plaintiffs' request for this information appears to have been mooted by Defendants' filing of March 30, 2015, identifying all Chief Instructors from March 20, 2011 to the present.  [#113]. Given the court's denial of Plaintiffs' Motion for Equitable Tolling [#111], the court finds that Plaintiffs' request for information dating back to 2005 is overly broad.  Therefore, the court denies as moot Plaintiffs' request to compel a further response to Interrogatory No. 6.

**Request for Production No. 11** seeks "any document that supports your response to any interrogatory or admission or supports any affirmative defense."  [#68 at 9].

Plaintiffs state that Defendants objected to this Request as "overly broad and [in violation of] the attorney work product privilege," and represented that they "have produced over 40,000

26

pages of documents and are currently assembling additional documents responsive to this request including Weekly Performance reports, day planners, calendars, diaries, telephone records, copies of checks, spreadsheets reflecting payments and other documents which will be produced in short order." *Id.* Plaintiffs claim Defendants have produced "some printouts of checks," but that "no Weekly Performance reports, day planners, calendars, diaries, or telephone records have been produced, and no responsive list identifying which documents might support their responses or defenses" has been produced. *Id.* Defendants respond that they provided a Second Supplemental Response stating that they had produced all documents that support a response to an interrogatory or admission or affirmative defense, and that they are unable to locate the specific items in Plaintiffs Request and thus unable to produce them. [#83 at 13].

The nature of Plaintiffs request is inherently overly broad, as it seeks any document that supports a response to any interrogatory or admission or supports any affirmative defense, without regard to importance of the evidence to the central issues in this case or whether such document(s) are cumulative of other evidence. *See Jeffryes v. Hartford Life & Accident Ins. Co.*, 2006 WL 1186493, *2 (D. Colo. May 4, 2006) (citing *Hiskett v. Wal–Mart Stores, Inc.,* 180 F.R.D. 403, 405 (D. Kan. 1998) (holding that an interrogatory requiring the responding party to identify all facts and each and every witness and document that support the allegations in the complaint was overly broad and unduly burdensome on its face)). Presumably, these documents are being sought through Plaintiffs' other discovery requests, and the court denies Plaintiffs' request to compel them pursuant to Request for Production No. 11.

**Subpoenas Duces Tecum** were served on accountants Niza Guerrero, Annete Gomez, Shavone Avalos, and Heidi Applehans, and objected to by Defendants on the basis of "personal

rights of privacy of non-party investors."  Plaintiffs claim these objections are identical to the objection the court rejected during the August 21 hearing on Plaintiffs' Motion to Compel. Defendants did not address these subpoenas in their Response.

It is unclear that defense counsel is representing these individuals and whether any documents have been produced.  Nevertheless, the appropriate course of action is not this instant Motion directed at Defendants, but a Motion to Compel directed at the individuals to whom the subpoenas were served.

               b.      Discovery Due September 28, 2014

Plaintiffs listed the following discovery requests in their Motion as items that would come due following the filing of the Motion.

**Interrogatory No. 7** asks Defendants to "List any loans applied for or received by any Defendant or group of Defendants from 2009 forward, including when the loan was applied for, the name and address of the lending entity, any other parties to the loan, and the amount applied for and received."

Defendants respond that they fully complied with this Interrogatory.  They responded to Plaintiffs that Masters United entities have brokered loans to various United Partners LLC entities, but the loans were not memorialized in writing.  Defendants also provided:

> In 2012, Z-Ultimate Martial Arts Supplies LLC applied for a loan with the Small Business Administration through Pacific Premier Bank, 17901 Von Karman Ave #1200, Irvine, CA (949) 864-8000 for $500,000 which was guaranteed by Paul Taylor, Hans Prosch, and William Clark. In 2011, Z-Ultimate Martial Supplies LLC obtained a credit card merchant advance through DB Squared, Inc. 6720 Fort Dent Way Ste 230, Seattle WA 98188. The guarantors of this loan were Z-Ultimate Self Defense Studios LLC and Z-Ultimate Martial Arts Supplies, LLC. This loan was replaced by a short term loan from the Hickman Family Trust which was paid off in 2013. The current loan has a balance of approximately $180,000 with Mulligan Funding 4619 Viewridge Ave, San Diego, CA 92123

(858) 427-0020.

[#83 at 14] (citing 83-4).   Plaintiffs argue in their Reply that Defendants failed to respond regarding all entities, and that "[i]n the altered P&Ls Defendants list automobile expenses of thousands of dollars per month… These are believed to be loans through Belco Credit Union. Further, Defendant Clark's home was purchased in 2010 and is believed to be mortgaged through Chase."  [#84 at 6].

Again, on its face, this Interrogatory fails to be sufficiently tailored to the claims at issue in this case.  For example, it is unclear how the mortgage for an individual Defendant's home is at all relevant to the central issue of whether Plaintiffs were employees, rather than independent contractors, who have wage claims under the FLSA.  Therefore, the court denies Plaintiffs' request to compel further production in response to Request for Production No. 11.

**Request for Production No. 12** seeks "all emails or other COMMUNICATIONS between Defendant William Clark and Heidi Applehans from February 1, 2014 forward."

Defendants state in their Response that they have produced "all email communications which have been located."  [#83 at 13].  Plaintiffs argue in their Reply that Defendants' originally promised to forward relevant text messages as well, and have not done so.  [#84 at 7].

The court hereby orders Defendants to produce copies of all relevant text messages no later than April 24, 2015.

**Request for Production No. 13** seeks "all emails or other COMMUNICATIONS to or from Defendant Clark referring to: Profit and Loss statements, 'QuickBooks' files, and any financial records for any Defendant, including COMMUNICATIONS to or from Attorney Thomas Francis from May 1, 2014 forward."

Defendants object in their Response on the basis of attorney client privilege and attorney work product privileges, and state that notwithstanding the objection, they have produced all documents responsive to this Request that they were able to locate. [#83 at 14]. Plaintiffs do not argue that they should be entitled to privileged communications, but argue simply that they have not received relevant text messages from Defendants. [#84 at 7].

Plaintiffs' arguments related to this Request for Production No. 13, as set forth in the Motion and the Reply, are far from clear. Based on the undeveloped record before it, the court finds no ground to conclude that any documents are being withheld improperly, and therefore, the court denies Plaintiffs' Motion as to this Request.

## CONCLUSION

For the reasons set forth herein, IT IS ORDERED:

(1)     Plaintiffs' Renewed Motion to Compel Discovery, Second Motion to Compel Discovery, and Motion for Sanctions and Contempt of Court is GRANTED IN PART, and DENIED IN PART;

(2)     Plaintiffs shall produce documents ordered no later than April 24, 2015, or certify by that date, that additional relevant documents cannot be found;

(3)     No later than May 8, 2015, Plaintiffs shall file a fee application in a manner which complies with the requirements of D.C.COLO.LCivR 54.3 specifying the amount of the expenses and attorney's fees claimed if, by that date, the Parties have not agreed to the amount of the award and/or it has not been fully satisfied; and

(4)     A further Scheduling Conference is set for May 18, 2015 at 10:00 a.m. in Courtroom C-205 in the Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado 80205. A proposed further Scheduling Order is due no later than seven (7) days prior to that Conference. In addition, the Parties should be prepared to address any outstanding discovery, including but not limited to Plaintiffs' Motion for Sanctions [#114].

The Parties are further directed that before filing any additional discovery motions, the Parties should jointly contact Chambers and engage in a teleconference where the court and the Parties can discuss the outstanding issues prior to the filing of any written motion.


DATED:  April 9, 2015                          BY THE COURT:


                                               s/Nina Y. Wang_____
                                               United States Magistrate Judge